*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(A Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, New Jersey 08540**
**609-919-6609 / 6647 / 6696**
**Richard G. Rosenblatt**
**James P. Walsh, Jr.**
**August W. Heckman III**
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>　　　　　　Plaintiff,<br>v.<br><br>RAJENDRA MAMODIA, NARESH AGARWAL, and JOHN JOHNSON,<br><br>　　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**Document Electronically Filed** |

Plaintiff COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION ("Cognizant"), by and through its attorneys, Morgan, Lewis & Bockius LLP, and against Defendants, RAJENDRA MAMODIA ("Mamodia") and JOHN JOHNSON ("Johnson,"), and NARESH AGARWAL ("Agarwal") (collectively, "Defendants"), alleges as follows:

Introduction

1.　　This is a case about Defendants' respective and consorted failure to keep their promises to their former employer, Cognizant. Defendants each held positions of significant responsibility and trust with Cognizant for which they were highly compensated. In conjunction with those responsibilities, each obtained deep knowledge of and the opportunity to build relationships and goodwill with Cognizant's most valued resources -- its employees. In exchange for those opportunities, Cognizant asked each Defendant to refrain, for a short period

of time, from soliciting and/or hiring Cognizant's employees in the event that Defendants were to leave Cognizant. The purpose of this provision is obvious. Cognizant needs time to replace departed employees such as Defendants, and must give those replacements the time to establish their own relationships and goodwill with other employees. Each Defendant agreed to this term. Now, however, each Defendant has broken his promise.

2.   Cognizant seeks damages, specific performance, injunctive relief and other appropriate remedies in connection with Defendants' blatant breach of their contractual non-solicitation obligations with Cognizant to further their own personal interests and those of their current employer, and competitor of Cognizant, Brillio, LLC ("Brillio").

3.   In particular, Defendants, former high-level management employees of Cognizant, violated and are continuing to violate the limited and reasonable terms of the agreements they entered into as a condition of their employment with Cognizant, by directly and/or indirectly soliciting and ultimately hiring numerous Cognizant employees to work for them at Brillio.

4.   Mamodia signed an Employee-At-Will Non-Solicitation, Invention Assignment and Non-Disclosure Agreement, dated January 27, 2006, a true and correct copy of which has been attached hereto as Exhibit A ("Mamodia Agreement").

5.   Johnson signed a Non-Disclosure, Non-Competition and Invention Assignment Agreement, dated June 27, 2011, a true and correct copy of which has been attached hereto as Exhibit B ("Johnson Agreement").

6.   Agarwal signed a Non-Disclosure, Non-Competition and Invention Assignment Agreement, effective April 12, 2010, a true and correct copy of which has been attached hereto

as Exhibit C ("Agarwal Agreement"). Exhibits A-C shall sometimes be collectively referred to as the "Agreements".

7.  Defendants' breaches of their Agreements and associated misconduct directly undermines Cognizant's business model. Indeed, by their poaching of Cognizant's employees (including several senior-level managers), Defendants are misappropriating Cognizant's goodwill and the significant investment it has made to hire and train such employees.

8.  By this action, Cognizant seeks injunctive relief, monetary damages resulting from Defendants' egregious actions, exemplary damages to reform or deter Defendants and others from engaging in similar conduct, and its attorneys' fees and costs associated with enforcing its rights under the Agreements.

## Parties

9.  Plaintiff Cognizant is a Delaware corporation with its headquarters located in College Station, Texas. Cognizant also maintains significant corporate operations located in Teaneck, New Jersey — within this judicial district, which is where it maintained its headquarters at the time the Agreements were executed.

10. Defendant Mamodia is an individual who recently advised that his mailing address is 7882 Kennard Lane, San Ramon California 94582. Mamodia is Chief Executive Officer ("CEO") of two New Jersey-based companies: Brillio and Collabera.

11. Mamodia is CEO of Brillio. According to Brillio's website:

> Raj Mamodia is Chief Executive Officer of Brillio and is responsible for the company's strategy and operations globally. Raj oversees the corporate direction for Brillio's global field operations, including sales, consulting, marketing, financial management, partnerships and acquisitions. He focuses on strategy, leadership, innovation, and customers. He is Brillio's primary decision and policymaker, setting the tone for the company's values, ethics and culture.

\*\*\*

> Prior to Brillio, Raj was CEO of Collabera, a technology services and solutions provider, employing more than 8,000 professionals across more than 25 offices and four world-class delivery centers in the U.S., UK, India, Singapore and Philippines. In this role, Raj pioneered Collabera's expansion and spearheaded the company's growth, setting the direction for a rapid and sustainable journey to become a recognized and highly respected information technology service provider working with leading Global 2000 organizations.
>
> In previous executive roles, Raj served as Head of Global Markets at Cognizant, a leading provider of information technology, consulting, and business process outsourcing services, for the IT Infrastructure business. As part of the leadership team at Cognizant, he held several key positions such as Head of Global Markets for Manufacturing, Logistics, Energy and Utilities, Consumer Goods and Head of Sales for various products and industries. In his 12-year tenure with Cognizant, Raj was instrumental in supporting rapid and profitable business growth by leading several business units and pioneering new technologies.

http://www.brillio.com/our-story/ (accessed on May 8, 2014). Brillio is a New Jersey limited liability company with headquarters at 35 Airport Road, Morristown, NJ 07960.

12. Mamodia is also employed as the CEO of Collabera, "a fast growing, end-to-end information technology services and solutions provider working with leading Global 2000 organizations from the Banking & Financial Services, Telecommunications & Media, Technology, Energy & Utilities and Manufacturing & Retail domains." http://collabera.com/news-events/press-releases/collabera_appoints_new_ceo/index.html (accessed on May 8, 2014). Collabera is headquartered at 25 Airport Road, Morristown, NJ 07960.

13. Defendant Johnson is an individual believed to be residing in or around the area of 9101 Tartan Fields Drive, Dublin, Ohio 43017. Mr. Johnson is currently employed by Brillio as a Senior Vice President.

14. Defendant Agarwal is an individual believed to be residing in or around the area of 41 Havenwood, Irvine, CA 92614. Mr. Agarwal is currently employed by Brillio as the Head of its Communications, Media, and Entertainment business unit.

## Jurisdiction and Venue

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) based on Cognizant's citizenship in the States of Texas and incorporation in Delaware and Defendants' citizenship in the States of California and Ohio. Further, the matter in controversy is in excess of $75,000, exclusive of interest and costs.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and the Court has personal jurisdiction over each Defendant, because (a) Johnson and Agarwal agreed to the exclusive jurisdiction of this Court with respect to all suits, proceedings, and other actions relating to, arising out of, or in connection with the Johnson and Agarwal Agreements, and Johnson and Agarwal waived any claims against or objections to this Court's personal jurisdiction. (Exs. B and C, ¶ 7.3); (b) Mamodia is the CEO of two New Jersey companies; (c) Defendants' unlawful acts were taken on behalf of Brillio and/or Collabera, each of which are companies incorporated and with their principal place of business in this judicial district; (d) the harm caused by Defendants' actions will be felt in this judicial district, which was the location of Cognizant's headquarters at the time the Agreements were executed, and where Cognizant's Manufacturing & Logistics business unit, a unit heavily affected by Defendants' unlawful acts, is based.

## Cognizant's Business

17. Cognizant is a leading provider of custom Information Technology (IT) consulting and technology services and outsourcing services. Its clients are primarily Global

2000 companies located in North America, Europe and Asia. Its core competencies include Technology Consulting, Complex Systems Development and Integration, Enterprise Software Package Implementation and Maintenance, Data Warehousing, Business Intelligence and Analytics, Application Testing, Application Maintenance, Infrastructure Management, and Business and Knowledge Process Outsourcing (BPO and KPO). Cognizant tailors its services to specific industries, and utilizes an integrated global sourcing model. This global sourcing model combines technical and account management teams located on-site at the client location and at dedicated near-shore and offshore development and delivery centers located primarily in India, China, the United States, Argentina, Hungary and the Philippines.

18. Cognizant's business is organized and managed primarily around four vertically-oriented business segments: Financial Services; Healthcare; Manufacturing, Retail and Logistics; and Other, which includes Communications, Information, Media and Entertainment and High Technology. This vertical focus has been central to Cognizant's revenue growth and high client satisfaction.

19. Cognizant hires experts out of industry, establishes a broad base of business analysts and consultants, invests in industry training for its staff, and builds industry-specific services and solutions. This approach is central to Cognizant's high-levels of on-time delivery and client satisfaction.

20. Using a globally distributed workforce to provide value-added services presents a number of challenges to IT services and BPO/KPO providers, like Cognizant. The offshore implementation of value-added IT services requires that Cognizant continually and effectively attract, train and retain highly skilled software development professionals with advanced technical and industry skills necessary to keep pace with continuing changes in information

technology, evolving industry standards and changing client preferences. These skills are necessary to design, develop and deploy high-quality technology solutions in a cost-effective and timely manner.

21. Competition for talent in the IT and consulting industries is fierce. In order to attract and retain talent, Cognizant invests considerable time and resources into developing its own technology and recruiting and retaining its employees. Indeed, critical to Cognizant's business model is identifying, training, and assigning employees to fulfill specific roles for Cognizant's clients. For this service, Cognizant is compensated by the client.

### Defendants' Employment With Cognizant

22. Mamodia was employed by Cognizant from 2003 until his resignation in March of 2013. Mamodia held a variety of senior management roles at Cognizant during that time frame, including but not limited to Head of Cognizant's Consumer Goods business unit, Head of Cognizant's Manufacturing and Logistics business unit, and Head of IT Infrastructure Services. In these roles, Mamodia led significant Cognizant business units, had significant interface with Cognizant clients as the lead representative for such business units, and had ultimate supervisory authority over hundreds of Cognizant employees, including account managers, sales personnel, delivery managers, and other personnel critical to Cognizant's business. Indeed, Mamodia's positions with Cognizant provided him with a unique vantage point to assess the skills, strategic value, working styles, compensation, and interpersonal abilities of numerous senior Cognizant employees.

23. Johnson joined Cognizant in July 2011 as Head of Cognizant's Manufacturing and Logistics business unit — succeeding Mamodia in that position. In this role, Johnson led a significant Cognizant business unit, had significant interface with Cognizant clients as the lead

representative for such business unit, and had ultimate supervisory authority over hundres of Cognizant employees. As with Mamodia, Johnson's position as head of a significant Cognizant business unit provided unique vantage point to assess the skills, strategic value, working styles, compensation, and interpersonal abilities of numerous senior Cognizant employees.

24. Agarwal joined Cognizant in April 2010, and was a Senior Client Partner for several Cognizant clients in the manufacturing and automotive industries. In these positions, Agarwal was responsible for the relationship between Cognizant and such clients, and Agarwal was able to capitalize on Cognizant's goodwill to form significant relationships with these clients. Further, in his position, Agarwal had access to information regarding Cognizant employees, and supervisory authority over a number of Cognizant employees.

25. As described above, Defendants had access to significant confidential and proprietary information of Cognizant. Further, as senior executives, Defendants had access to significant information regarding Cognizant employees, including performance reviews, compensation, and other information that allowed them to unfairly cherry-pick Cognizant employees for their new company, in direct contravention of the Agreements.

### The Agreements

26. In order to preserve its business model, Cognizant requires all of its employees to execute agreements which, among other things, contain non-solicitation and confidentiality provisions. *See, e.g.*, Exs. A, B and C (containing provisions for the protection of its business model and confidential information).

27. For example, Section 5 of the Mamodia Agreement states:

> During and for a period of two (2) years after the period of my employment with the Company, I will not solicit for employment, directly or indirectly, or induce or actively attempt to influence, any employee of the Company or affiliate of the Company, as such term is defined in the Securities Act of 1933, as amended, to

8

terminate his or her employment or discontinue such person's consultant, contractor or business association with the Company.

See Ex. A, ¶ 5.

    28.    Similarly, Section 2.3 of the Johnson and Agarwal Agreements states:

During the term of Employee's employment with the Company, and for a period of twelve (12) months thereafter, Employee will not, either directly or indirectly, or for himself/herself or through, on behalf of or in conjunction with any person, persons or legal entity:

(a)    solicit, seek to employ, seek to retain or retain the services of any person who is at that time, or was within the previous twelve (12) months, providing services to the Company as an employee or independent contractor within the previous twelve (12) months;

(b)    persuade, induce or attempt to persuade or induce any person who has provided services to the Company within the previous twelve (12) months as an employee or independent contractor to leave his/her employment or to refrain from providing services to the Company; or

(c)    either directly or indirectly solicit customers serviced by Employee or sought to be serviced by Employee or customers with whom Employee came into contact in any way on account of his employment with Company, which solicitation is for or on behalf of any person or entity engaged in the Company's Business. Employee acknowledges and agrees that pursuit of the activities forbidden by this paragraph would necessarily involve the use or disclosure of Confidential Information in breach of this Agreement, but that proof of such breach would be extremely difficult. Employee further acknowledges and agrees that the prohibitions contained in this paragraph are reasonable and necessary to protect the Company's trade secrets.

See Exs. B and C, ¶ 2.3.

    29.    Johnson and Agarwal further agreed that "if [they] engaged in any activities prohibited by th[e] Agreement or fails to take actions required by th[e] Agreement, irreparable harm to the Company will likely result, for which a remedy in the form of damages may not be

adequate or otherwise ascertainable. Consequently, the Company will be entitled to temporary, preliminary and permanent injunctive relief against Employee." *Id.*, ¶ 7.2.

30. Mamodia similarly agreed that "in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and monetary damages alone would not adequately compensate the Company. The Company will therefore be entitled to injunctive relief to enforce this Agreement." *See* Ex. A, ¶ 8.

## Defendants' Wrongful Conduct

31. Immediately upon termination of his employment with Cognizant, Mamodia became CEO of Collabera.

32. Upon information and belief, Mamodia became dissatisfied with Collabera's strategy of seeking to become a tier-II offshore IT services firm. Rather, Mamodia wanted to revamp Collabera's operations strategy in order to focus on professional services, consulting, and solutions. To that end, Mamodia engineered a spin-off of the consulting and solutions businesses of Collabera into a new entity named Brillio.

33. Upon information and belief, Collabera/Brillio did not have the employee resources, know-how, and internal structure necessary to embark on a consulting/solutions oriented business model. Rather, Brillio's success would depend on hiring a number of key executives from other companies who possessed such skills and know-how, and had been trained in Brillio's core businesses. Cognizant — Mamodia's employer immediately preceding his departure for Collabera — was the natural target. Thus, upon information and belief, Mamodia embarked on a quest to recruit current and former Cognizant executives to Brillio in order to lend credibility to Brillio in the marketplace, take advantage of the training, goodwill, and know-how

of Cognizant and its current and former employees, and ultimately to woo Cognizant clients to cease doing business with Cognizant, and instead to do business with Brillio.

34. Among Mamodia's hires to Brillio was Johnson. Mamodia and Johnson, either individually and/or in concert, have solicited, persuaded, attempted to persuade, induced and/or influenced, or attempted to influence, numerous current and former Cognizant executives to terminate their employment with Cognizant and to work with them at Brillio, including but not limited to the following: Sahara Galloway Alexis, Eric Pelofsky, Jeff Wallace, Agarwal, Joydeep Ghosh, Pranaay Gupta, and Amit Gautam, among others.

35. The individuals described above are not low-level personnel, but rather, high level, strategic personnel who could provide Brillio a competitive advantage in the marketplace without the typical investment in recruiting and sourcing which entrants into a marketplace must make – and which Cognizant certainly incurred.

36. For example, Ms. Alexis was employed by Cognizant as Senior Director – Mobility Services, and is now employed by Brillio as Global Head of Mobility Services.

37. Mr. Pelofsky was employed by Cognizant as a Senior Sales Director and is now employed by Brillio as its Vice President of Sales.

38. Mr. Agarwal was employed by Cognizant as a Senior Client Partner, and is now employed by Brillio as the head of its Communications, Media, and Entertainment business.

39. Mr. Wallace was employed by Cognizant as a Practice Leader for Cognizant Mobility, and is now employed as head of the Mobility Practice at Brillio.

40. Upon information and belief, these strategic hires did not occur by happenstance, but rather as a result of a coordinated effort by Mamodia and/or Johnson on behalf of Brillio, in

violation of their contractual obligations to Cognizant. Indeed, browsing of list senior Brillio executives reads like a Cognizant alumni list.

41. Among Brillio's stated areas of focus and expertise is consulting services for clients in the retail and consumer goods industries. http://www.brillio.com/cpg-and-retail/ (accessed on May 8, 2014).

42. Cognizant has a leading business consulting practice (CBC) for clients across numerous industries, including retail and consumer goods.

43. Upon information and belief, Mamodia or someone acting on his behalf obtained a list of current and former employees in the Cognizant retail CBC practice, and began impermissibly soliciting such employees to join Brillio at least as early as January 2014. Thus, Mamodia and/or persons acting on his behalf have utilized Cognizant's confidential information in furtherance of his attempted raid of Cognizant's talent.

44. Additionally, Mamodia, Johnson, and Agarwal have called numerous other Cognizant employees. Upon information and belief, Defendants during these calls attempted to and/or did solicit, persuade, and/or induce Cognizant's employees to join Brillio. For instance, Johnson had numerous telephone conversations with Agarwal — a Cognizant employee who was in Johnson's Manufacturing & Logistics business unit at Cognizant — between at least January and March 2014.

45. On or about April 5, 2014, Mr. Agarwal terminated his employment with Cognizant, and is now the head of the Communications, Media, and Entertainment practice group at Brillio.

46. Further, Johnson, Mamodia, and Agarwal each were involved in multiple telephone conversations with Amit Gautam, a Senior Director in Cognizant's Manufacturing &

Logistics business unit, between January and April 2014. Agarwal had multiple, lengthy conversations with Gautam both before and after his April 5, 2014 departure from Cognizant, including a 41 minute conversation on April 16, 2014 — the day before Gautam's resignation from Cognizant.

47. On or about April 17, 2014, Gautam submitted his resignation to Cognizant. Cognizant attempted to persuade Gautam to stay at Cognizant, and after changing his mind several times, on April 30, 2014 Gautam informed Cognizant of his intent to go through with his resignation from Cognizant. Upon information and belief, Gautam intends to join Brillio after termination of his employment with Cognizant.

48. As described above, Defendants' contractual obligations to Cognizant include not only the responsibility to refrain from soliciting Cognizant employees, but also to refrain from persuading, inducing or attempting to persuade or induce any Cognizant employee to leave his or her employment with Cognizant.

49. Upon information and belief, the aforementioned activities are but the tip of the iceberg with respect to prohibited activities undertaken by Mamodia, Johnson, Agarwal, and others acting in concert with them in contravention of both the Agreements and Cognizant's common-law rights. Unless restrained by this Court, Cognizant believes that these prohibited acts will continue, to the detriment of Cognizant's legitimate business interests.

## COUNT I
### (Breach of Contract)

50. Cognizant realleges and incorporates paragraphs 1 through 49, as though fully set forth herein.

51.  Defendants breached their Agreements by soliciting, directly or indirectly, or inducing, persuading or actively attempting to persuade or influence Cognizant employees to terminate their employment with Cognizant for employment with Brillio.

52.  Cognizant performed fully its obligations under the Agreements.

53.  Defendants' intentional breaches of the Agreements injured, and continue to injure, Cognizant's business, thereby causing Cognizant to suffer irreparable harm, and further causing Cognizant to suffer monetary damages.

54.  Cognizant is entitled to injunctive relief.

**WHEREFORE**, Cognizant respectfully requests that:

(1) Defendants be enjoined from soliciting Cognizant employees to work for Brillio or any other company for a period of time remaining under their Agreements and extended by the period of their breach;

(2) Cognizant be reimbursed by Defendants for any and all compensatory damages, attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3) This Court grant such other and further relief as it may deem just and equitable.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

55.  Cognizant realleges and incorporates paragraphs 1 through 54, as though fully set forth herein.

56.  Defendants' actions described above violate the implied covenant of good faith and fair dealing inherent in their Agreements.

57.  Defendants' actions were taken with malice, bad faith and/or reckless indifference to Cognizant's rights under the Agreements.

58.  By their actions, Defendants intended to deprive Cognizant of its rights under the Agreements.

59. Defendants breached the implied covenant of good faith and fair dealing by engaging in this improper conduct and breaching their Agreements that were designed to protect Cognizant's legitimate business interests.

60. As a result of these actions, Cognizant has suffered damages. Defendants and their current employer have benefited financially as a result of Defendants' improper actions.

**WHEREFORE**, Cognizant respectfully requests that:

(1) Defendants be enjoined from soliciting Cognizant employees to work for Brillio or any other company for a period of time remaining under their Agreements and extended by the period of their breach;

(2) Cognizant be reimbursed by Defendants for any and all compensatory damages, attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3) This Court grant such other and further relief as it may deem just and equitable.

Dated: May 9, 2014

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Richard G. Rosenblatt
Richard G. Rosenblatt
James P. Walsh, Jr.
August W. Heckman III
502 Carnegie Center
Princeton, NJ 08540
609-919-6609/6696